86 F.3d 1156
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Vickie MITCHELL, Plaintiff-Appellant,
v.
WHITE CASTLE SYSTEMS, INC., Defendant-Appellee.
 No. 94-1193.
 United States Court of Appeals, Sixth Circuit.
 May 24, 1996.
 
 1
 Before: NELSON and SUHRHEINRICH, Circuit Judges; and SMITH, District Judge.[1]
 
 PER CURIUM:
 
 2
 This is a wrongful termination action in which plaintiff asserts claims of racial discrimination and breach of an employment contract. Plaintiff contends that the district court erred in finding that the amount in controversy exceeded $50,000. She also maintains that the district court erred in granting summary judgment in defendant's favor. For the reasons that follow we affirm the district court's judgment.
 
 I.
 
 3
 Vickie Mitchell, an African-American, began working for White Castle Systems, Inc. ("White Castle") in 1980.
 
 
 4
 In 1988 Ms. Mitchell complained to her district supervisor, Wanda Meadows, that her immediate supervisor at the time, Gwen Motley, refused to promote her to assistant supervisor and had instead promoted another woman. Both the immediate supervisor and the woman promoted are African-Americans. Ms. Meadows is white. Ms. Meadows spoke with Ms. Mitchell's supervisor, Ms. Motley, who indicated that Ms. Mitchell was not given the position because her performance did not warrant a promotion.
 
 
 5
 Ms. Meadows decided to transfer Ms. Mitchell to White Castle, No. 37 and promote her to assistant supervisor. In the fall of 1989, Ms. Mitchell complained that she was having problems with her immediate supervisor, Sheri MacDonald, who is white. The area supervisor, Irene Ross, conducted a meeting with Ms. Mitchell and her supervisor, Ms. MacDonald. Ms. Ross, believing that Ms. Mitchell would be happier elsewhere, transferred her back to White Castle No. 29.
 
 
 6
 After returning to store No. 29, one of Ms. Mitchell's two immediate supervisors was Donna Hawthorne, who is African-American. The other was JoAnn Deshazer who is also African-American. In February of 1990 Ms. Hawthorne counseled Ms. Mitchell on counting down the safe before leaving the store for the evening which was one of Ms. Mitchell's duties as assistant supervisor. The following morning the safe was counted and was $4.00 short. Ms. Hawthorne documented this incident on a "minute report" as required by White Castle policy.
 
 
 7
 After this incident tension grew between Ms. Mitchell and her supervisor, Ms. Hawthorne. Ms. Mitchell called the district supervisor, Ms. Meadows, in late July or early August and a meeting was arranged.
 
 
 8
 Those present at this third meeting were Ms. Mitchell; Ms. Hawthorne and Ms. Deshazer, co-supervisors; and Ms. Meadows, the district supervisor. At this meeting Ms. Mitchell complained that she had problems communicating with Ms. Hawthorne and stated that she did not respect either of her supervisors and did not consider them role models. As the meeting progressed without resolution, Ms. Meadows telephoned her own supervisor and told him she thought it would be best to terminate Ms. Mitchell's employment based on what was said at the meeting and the similar problems that Ms. Mitchell had with her two previous supervisors. Ms. Meadows then terminated Ms. Mitchell's employment.
 
 
 9
 Ms. Mitchell filed suit in Michigan state court on June 3, 1992 alleging wrongful termination based on race under the Elliott-Larsen Act and breach of an employment contract. Count I of her complaint pleaded damages of "less than $50,000.00" in the form of lost remuneration and damage to professional reputation. Count II pleaded additional damages--also "less than $50,000.00"--for emotional distress. In her prayer for relief Ms. Mitchell asked for damages "according to proof," that would compensate her for loss of earnings, deferred compensation, and other employment benefits; losses incurred in seeking substitute employment; and losses resulting from humiliation, mental anguish, and emotional distress. She also asked for interest on her lost earnings and benefits, plus punitive damages according to proof.
 
 
 10
 White Castle removed the action to the Federal District Court for the Eastern District of Michigan based on diversity of citizenship and the amount in controversy. Ms. Mitchell moved to remand, arguing that the amount in controversy was less than the requisite amount of $50,000.
 
 
 11
 On August 26, 1992, the district court denied Ms. Mitchell's motion to remand, holding that it did not appear with legal certainty that the amount in controversy was less than $50,000. This finding was based on Ms. Mitchell's state law discrimination claim which included a claim for emotional distress. The district court examined other such claims and found that damages for these types of claims vary greatly and regularly exceed $50,000.
 
 
 12
 After the district court decided to retain jurisdiction, White Castle moved for summary judgment. On November 29, 1993, the magistrate judge issued a report and recommendation stating that White Castle's motion for summary judgment should be granted. The district court adopted the recommendation on January 14, 1994 and Ms. Mitchell filed the instant appeal.
 
 II.
 
 13
 The first issue is whether the district court erred in concluding that the amount in controversy exceeded the requisite requirement of $50,000 for purposes of diversity jurisdiction. The existence of subject matter jurisdiction is a question of law subject to de novo review. Gafford v. General Electric Co., 997 F.2d 150, 155 (6th Cir.1993). This court, however, reviews a district court's factual determinations regarding jurisdictional issues for clear error. Id.
 
 
 14
 A federal district court has original jurisdiction over diversity cases only "where the matter in controversy exceeds the sum or value of $50,000, exclusive of interests and costs." 28 U.S.C. § 1332(a) (1988). A plaintiff in a diversity case may defeat removal to federal court by suing for less than the jurisdictional amount. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 294 (1938). A defendant desiring to remove a case must prove the jurisdictional requirements. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). In this circuit, the defendant has the burden of proof by a preponderance of the evidence. Gafford, 997 F.2d at 158.
 
 
 15
 White Castle has met that burden in this case. Ms. Mitchell's net loss of earning, including a conservative allowance for fringe benefits, totals $32,929.02. As to the claim for emotional distress, plaintiff's counsel told the district court that "it may be reasonable ... to evaluate the claim as being equal to one year's salary or $17,222.40." Ms. Mitchell thus claims a total slightly in excess of $50,000, apart from any claim for punitive damages or damages for injury to reputation. There is additional support in the fact that Ms. Mitchell rejected an offer to stipulate that her claims did not exceed $50,000 in toto.[2]
 
 
 16
 For these reasons the Court concludes that the district court did not commit clear error by finding that the amount in controversy exceeded $50,000. The requisite amount was satisfied and White Castle was entitled to remove the action.
 
 III.
 
 17
 The second issue is whether the district court erred in concluding that plaintiff failed to establish a genuine issue of material fact with respect to her state law race discrimination claim and in granting summary judgment to White Castle.
 
 
 18
 This court reviews a district court's grant of summary judgment de novo. Kinnie v. United States, 994 F.2d 279, 282 (6th Cir.1993). The moving party must establish "sufficient facts for the court to find that there is an absence of evidence to support the nonmoving party's case." Celotex v. Catrett, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Electric Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must consider the evidence and factual inferences drawn from it in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This court should sustain the district court decision only if there is no genuine issue of material fact. City of Mount Clemens v. United States Environmental Protection Agency, 917 F.2d 908, 914 (6th Cir.1990).
 
 
 19
 Ms. Mitchell filed the present action under the Michigan Elliott-Larsen Civil Rights Act, M.C.L.A. § 37.2101. A plaintiff can establish a prima facie case of race discrimination under this act by showing (1) that she was a member of a protected class; and (2) that for the same or similar conduct she was treated differently than similarly-situated individuals of a different race. Dixon v. Grainger, 423 N.W.2d 580, 583 (Mich.Ct.App.1985).[3] Once a plaintiff establishes a prima facie case, the burden of proof shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action. Id. at 581-82. Plaintiff then has the opportunity to prove by a preponderance of the evidence that defendant's proffered reason is a mere pretext for discrimination. Burdine, 450 U.S. at 255.
 
 
 20
 Ms. Mitchell fails the second prong of this analysis. First, Ms. Mitchell points to three groups of people whom she claims are similarly-situated, and who were reprimanded or given bad performance reviews rather than fired: (1) white employees with problems relating to their supervisors; (2) white employees who had problems relating to co-workers; and (3) white assistant supervisors given an opportunity to correct problems. The district court found that none of these groups are similarly-situated. On appeal Ms. Mitchell argues only two of the groups as being similarly-situated.
 
 
 21
 The first category identified is "white employees with problems relating to their supervisors." Ms. Mitchell contends that these white employees had problems with supervisors but were not fired.
 
 
 22
 The district court found that the conduct of this group was far less severe than that of Ms. Mitchell. There is no evidence that any of these other employees stated an inability to work with their supervisors nor is there evidence of any transfers because of problems with supervisors. There is also no evidence that any of these employees evinced the same pattern of behavior which Ms. Mitchell displayed: three times demanding a meeting with the district supervisor, which meeting on each occasion proved lengthy and difficult to resolve. The first time Ms. Mitchell used this tactic, she was transferred and promoted; the second time, she was transferred; the third time, she was fired. Nothing indicates that these other employees were similarly situated in this regard.
 
 
 23
 The second category identified is "white employees who had problems relating to co-workers." Ms. Mitchell also contends that these employees were not fired and were given an opportunity to improve. As the district court stated, however, employees having problems relating to co-workers are not comparable to plaintiff, who was unwilling to work with her supervisors.
 
 
 24
 We conclude that Ms. Mitchell has failed to prove that she was treated differently than similarly-situated individuals. Because Ms. Mitchell fails the second prong of the analysis, a prima facie case has not been established.
 
 
 25
 Moreover, even if plaintiff had established a prima facie case, White Castle has come forward with a legitimate, non-discriminatory reason for Ms. Mitchell's termination. White Castle asserts that the reason for Ms. Mitchell's termination was her demonstrated unwillingness to work with her supervisors on three separate occasions. Ms. Mitchell has failed to prove that the stated reason for her termination was a pretext for discrimination.
 
 
 26
 For these reasons, the Court concludes that the district court did not err in granting summary judgment for White Castle on Ms. Mitchell's state law race discrimination claim.
 
 IV.
 
 27
 The third issue is whether the district court erred in concluding that plaintiff failed to establish a genuine issue of material fact with respect to her state law just-cause employment contract claim.
 
 
 28
 Michigan law presumes that employment relationships are at-will. Rood v. General Dynamics Corp., 507 N.W.2d 591, 598 (Mich.1993). Michigan recognizes two exceptions to at-will employment. The first exception is where an express agreement exists and is referred to as the "contract theory." Id. at 598. The second is based on public policy and the employee's expectations and is referred to as the "expectations theory." Id. These alternative theories mandate that an employee be fired only for just-cause.
 
 
 29
 In order to fit within the "contract theory" exception and overcome the presumption of employment-at-will, a party must present sufficient proof either of a contractual provision for a definite term of employment or a provision forbidding discharge absent just-cause. Rood, 507 N.W.2d at 597. Oral statements of job security or assurances of discharge only for just-cause must be "clear and unequivocal to overcome the presumption of employment at-will." Rowe v. Montgomery Ward & Co., 473 N.W.2d 268, 275 (Mich.1991).
 
 
 30
 To establish an express agreement, Ms. Mitchell first relies on oral assurances to the effect that when she was hired she was told "as long as I follow the policy of cash handling and the attendance policy that I would always be assured a job at White Castle." As the district court correctly concluded, the Michigan Supreme Court rejected a very similar oral assurance as a basis for a binding employment contract. Rowe, 473 N.W.2d at 276.
 
 
 31
 Second, Ms. Mitchell relies on specific policies set forth in White Castle's employment application and cash handling booklet. These documents contain provisions for progressive employee discipline. None of the documents, however, suggests that an employee can be terminated only for just-cause. Neither the adoption of systematic procedures for dealing with employees nor the creation of disciplinary guidelines transforms an at-will relationship into one prohibiting discharge except for just-cause. Biggs v. Hilton Hotel Corp., 486 N.W.2d 61, 63 (Mich.Ct.App.1992). Thus, neither the oral assurances nor the documents are sufficiently clear and unequivocal to create a just-cause contract.
 
 
 32
 In analyzing an "expectations theory," the court must determine (1) what, if anything, the employer has promised; and (2) whether the promise is reasonably capable of instilling a legitimate expectation of just-cause employment. Rood, 507 N.W.2d at 606. Only policies that reasonably relate to employee termination can create such expectations. Id. Summary judgment is appropriate whenever employer policy statements concerning discharge are not reasonably capable of being interpreted as promises of just-cause employment. Id. at 607.
 
 
 33
 Ms. Mitchell presents the same evidence to prove that she had a legitimate expectation of just-cause employment. The oral assurances and the documents are not reasonably capable of creating legitimate expectations of just-cause employment. If such documents were sufficient, no employer could ever establish policies informing its employees of reasons why they could be fired without creating a "just-cause" labor force.
 
 
 34
 Additionally, even if such evidence was sufficient to establish a just-cause relationship, White Castle has proven that there was just cause for Ms. Mitchell's termination. White Castle has established that her employment was terminated because she was unwilling to work with her supervisors.
 
 
 35
 For these reasons, the Court concludes that the district court did not err in granting summary judgment for White Castle with respect to the employment contract claim.
 
 V.
 
 36
 For the foregoing reasons the Order of the Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, granting summary judgment in favor of White Castle is hereby AFFIRMED.
 
 
 
 [1]
 The Honorable George C. Smith, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [2]
 Ms. Mitchell offered to file a post-removal stipulation that the amount in controversy is less than $50,000. The Supreme Court has stated that a post-removal stipulation has no effect on federal jurisdiction over the original complaint. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 294 (1938). The Seventh Circuit recently addressed this question, stating "litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, St. Paul makes later filings irrelevant." In re Shell Oil Co., 970 F.2d 355, 356 (7th Cir.1992). This Circuit has suggested that it will follow the same rule. Van Meter v. State Farm Fire & Cas. Co., 1 F.3d 445, 449-50 (6th Cir.1993)
 
 
 [3]
 The Michigan courts use the same analysis in employment discrimination cases that was developed in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255 (1981)