payment of attorney fees, Rule 41(d) also ought to permit attorney fees.  The reasoning is that because both rules are intended to prevent vexatious litigation and forum shopping, "it would be inconsistent to conclude that a court has discretion to condition Rule 41(a)(2) voluntary dismissal without prejudice on payment of attorney fees, but that a court does not have discretion to exact the same payment from a plaintiff who has noticed a Rule 41(a)(1) dismissal in a previous case." *Esquival*, 913 F.Supp. at 1391.

One commentator accounts for this "anomaly" by suggesting that Rule 41(a)(2) contemplates a negotiation between the court and the litigant, but Rule 41(d) does not. Hence, these two rules are meant to "operate differently." *See* Edward X. Clinton, Jr., *Does Rule 41(d) Authorize an Award of Attorney's Fees?*, 71 St. John's L. Rev. 81, 86 (1997).  We do not hang our hat on this rationale; but we note it as further evidence that the structure of the Federal Rules of Civil Procedure is not so clear on this issue that it overcomes the absence of an express provision for attorney fees in Rule 41(d).  In short, we are persuaded by the fact that Congress did not explicitly provide for attorney fees in Rule 41(d).  We do not find that the structure of the Civil Rules is so unambiguous that we can divine a contrary intent on the part of Congress.  And we think it improper to essentially re-draft the rule ourselves by reading into it language that is not there.

For these reasons, that portion of the district court's order which awarded Wal-Mart $1581.55 in attorney fees cannot stand.

## IV.  Conclusion

We AFFIRM the district court's denial of the motion to remand and we VACATE the district court's award of costs insofar as it awarded attorney fees.  Further, we REMAND with instructions for the district court to enter an order that, upon payment of costs in the sum of $185 within thirty (30) days of the date of the district court's order, plaintiff's case will be reinstated on the district court docket.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0378P (6th Cir.)
File Name:  00a0378p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

SHIRLEY K. ROGERS,
　　　　*Plaintiff-Appellant,*

　　*v.*　　　　　　　　　　No. 99-6348

WAL-MART STORES, INC.,
　　　　*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 99-02342—Jon Phipps McCalla, District Judge.

Argued:  September 13, 2000

Decided and Filed:  October 26, 2000

Before:  GUY and MOORE, Circuit Judges; DOWD,
District Judge.

———————

## COUNSEL

**ARGUED:**  Ted S. Angelakis, SKOUTERIS LAW FIRM, Memphis, Tennessee, for Appellant.  Cameron C. Jehl, ROSSIE, LUCKETT, PARKER & RIDDER, Memphis,

———————

[*] The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

Tennessee, for Appellee.  **ON BRIEF:**  Ted S. Angelakis, SKOUTERIS LAW FIRM, Memphis, Tennessee, Daniel F.B. Peel, PEEL & WEIRICH, Memphis, Tennessee, for Appellant.  Cameron C. Jehl, Lorrie K. Ridder, William O. Luckett, Jr., ROSSIE, LUCKETT, PARKER & RIDDER, Memphis, Tennessee, for Appellee.

———————————

## OPINION

———————————

DOWD, District Judge.

## I.  Introduction

This case arises out of injuries suffered by Shirley K. Rogers when she tripped and fell on a wooden pallet located in the aisle of a Wal-Mart store in Memphis, Tennessee. Rogers contends that employees of Wal-Mart acted negligently in leaving the pallet in a shopping area.

On October 17, 1997, Rogers filed a complaint in Tennessee state court asserting her negligence claims and seeking approximately $950,000 in damages.  On November 18, 1997, Wal-Mart answered and removed to the United States District Court for the Western District of Tennessee on the grounds of complete diversity among the parties and an amount in controversy exceeding $75,000.  On October 9, 1998, the parties stipulated to dismissal, and on October 14, 1998, the district court entered an order dismissing the case without prejudice.

On February 4, 1999, Rogers filed a new complaint in Tennessee state court.  The second complaint, arising out of the same occurrence, specified that Rogers sought to recover an amount "not exceeding $75,000."  Wal-Mart filed another notice of removal based on answers to interrogatories in the first case in which Rogers estimated her damages at $447,000. Rogers filed a motion to remand on May 14, 1999, asserting that the amount-in-controversy requirement for diversity

We realize that an award of attorney fees may be authorized, even if not expressly provided for, "if the statute otherwise evinces an intent to provide for such fees." *Key Tronic Corp. v. United States*, 511 U.S. 809, 815 (1994). However, the structure of the Federal Rules of Civil Procedure is ambiguous at best on the question of attorney fees.  For instance, whereas Rule 41(d) only speaks of "costs" and does not mention attorney fees, several other provisions in the Federal Rules explicitly provide for recovery of attorney fees.  *See Simeone v. First Bank Nat'l. Ass'n*, 125 F.R.D. 150, 155 (D. Minn. 1989) (listing Fed.R.Civ.P. 30(g)(2), 37(a)(4), 37(c), 37(d) & 56(g)).  In addition, Title 28 U.S.C. § 1920 lists the items a court may tax as "costs" to a prevailing party under Rule 54(d) but does not include attorney fees.  *Id.*; *see also Anders v. FPA Corp.*, 164 F.R.D. 383, 390 (D.N.J. 1995) (denying attorney fees in part because of lack of express authorization).  The non-inclusion of attorney fees under § 1920 indicates that, at least in some contexts, Congress does not consider attorney fees to be part of an award of "costs."

Of course, many courts have permitted an award of attorney fees under Rule 41(d).  They often rely on what they consider to be the policy behind the rule and, in our view, give too little weight to its plain language.  *See, e.g., Behrle v. Olshansky*, 139 F.R.D. 370, 372-73 (W.D. Ark. 1991).  In addition, some courts find attorney fees available under Rule 41(d) because, in their view, there ought to be a certain parallelism between Rule 41(d) and Rule 41(a)(2), which also does not explicitly mention attorney fees.  In *Esquival v. Arau*, 913 F.Supp. 1382, 1391 (C.D. Cal. 1996), for instance, the court reasoned that because Rule 41(a)(2) permits a court to condition voluntary dismissal without prejudice on

———————————

which then has roughly seven months to exercise a veto.  In the absence of a veto, the proposed rule goes into effect.

Robert G. Bone, *The Process of Making Process: Court Rulemaking, Democratic Legitimacy, and Procedural Efficacy*, 87 Geo.L.J. 887, 892-93 (footnotes omitted).

Rule 41(d). There is a split of authority as to whether Rule 41(d) authorizes attorney fees as part of an award of "costs," but it seems that the majority of courts find that attorney fees are available under Rule 41(d). The Sixth Circuit has recently recognized the split but declined to make a ruling: "although . . . most courts have concluded that attorney fees may be awarded under Rule 41(d), the matter is far from settled in this circuit or in most others." *Duffy v. Ford Motor Co.*, 218 F.3d at 632.

We now hold that attorney fees are not available under Rule 41(d). The reason is simple—the rule does not explicitly provide for them. Where Congress has intended to provide for an award of attorney fees, it has usually stated as much and not left the courts guessing. Further, the law generally recognizes a difference between the terms "costs" and "attorney fees" and we have no desire to conflate the two terms. Rather, we must assume that Congress was aware of the distinction and was careful with its words when it approved Rule 41(d).[4]

---

[4]Of course, we realize that Congress itself did not choose the words contained in the rule. The language actually resulted once Congress declined to exercise its veto power following the usual rule-making process. One commentator has described this process succinctly:

> . . . The Supreme Court has the power to "prescribe general rules of practice and procedure" for the federal courts, and the Judicial Conference of the United States has the authority to recommend rule changes to the Supreme Court. The Judicial Conference in turn oversees a committee structure that includes a Standing Committee on Rules of Practice and Procedure appointed by the Chief Justice of the Supreme Court and various advisory committees accountable to the Standing Committee. The Advisory Committee on Civil Rules, which consists of judges, lawyers, and legal academics, is responsible for the Federal Rules of Civil Procedure.
>
> There are several stages in the rulemaking process. A proposed rule is first considered by the Advisory Committee. If the Advisory Committee approves the proposal, it is then reviewed by the Standing Committee and finally by the Judicial Conference before being forwarded to the Supreme Court. If the Supreme Court concurs, the proposal is transmitted to Congress,

jurisdiction had not been met. Along with her motion to remand, Rogers submitted an affidavit stating that she "had no intention of seeking additional damages against Wal-Mart Stores, Inc." and that she had "instructed [her] attorney to stipulate that [her] demand for damages will not exceed $75,000 at any time in the future." Rogers also attached a stipulation admitting that her total damages did not exceed $75,000 and stating that she would not seek leave of court to amend her complaint for additional damages. Meanwhile, Wal-Mart moved the district court, pursuant to Fed.R.Civ.P. 41(d), to award costs and fees for the previously dismissed action.

The district court denied Rogers' motion to remand on June 23, 1999. On the same day, the district court granted Wal-Mart's Rule 41(d) motion and ordered Rogers to pay costs and attorney fees from the original action representing work that would not benefit Wal-Mart in the second action. The district court also stayed the proceedings and gave Rogers fourteen days to pay Wal-Mart the costs and fees. On September 2, 1999, the district court dismissed the case without prejudice due to Rogers' non-payment of Wal-Mart's costs and fees from the first action.

Rogers has appealed the district court's June 23, 1999 Order denying her motion to remand; its Order of June 23, 1999 granting costs under Fed.R.Civ.P. 41(d); and its Order and Judgment entered on September 2, 1999 dismissing the case without prejudice with costs taxed to the plaintiff.

## II. Removal

We review *de novo* the existence of subject matter jurisdiction as a question of law; factual determinations regarding jurisdictional issues are reviewed for clear error. *See Gafford v. General Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993). We also review *de novo* the denial of a motion to remand. *See Ahearn v. Charter Twp. of Bloomfield,* 100 F.3d 451, 453 (6th Cir. 1996).

Generally, a civil case brought in a state court may be removed by a defendant to federal court if it could have been brought there originally. 28 U.S.C. § 1441(a). A federal district court has original "diversity" jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest. 28 U.S.C. 1332(a). A defendant removing a case has the burden of proving the diversity jurisdiction requirements. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).

A problem arises where, as here, a plaintiff alleges an amount in controversy below the jurisdictional amount. Generally, because the plaintiff is "master of the claim," a claim specifically less than the federal requirement should preclude removal. *See Gafford v. General Elec. Co.*, 997 F.2d 150, 157 (6th Cir. 1993). State counterparts to Fed.R.Civ.P. 54(c) might enable a plaintiff to claim in her complaint an amount lower than the federal amount in controversy but nevertheless seek and recover damages exceeding the amount prayed for. *Id.* Tennessee has one such rule. Its Civil Procedure Rule 54.03 provides that, except in the case of default, "every final judgment shall grant relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." In such situations, the removing defendant must show that it is "more likely than not" that the plaintiff's claims meet the amount in controversy requirement. *Gafford*, 997 F.2d at 158.

To meet its burden for removal, the defendant in this case relied on the fact that plaintiff's first action sought nearly $1 million and that plaintiff made sworn responses to discovery requests stating that her amount of damages exceeded $447,000. The district court cited these facts in finding that it was more likely than not that the amount in controversy exceeded $75,000. Rogers, however, argues that the district court should have granted her motion to remand because she (1) filed a complaint in the second action seeking damages under the jurisdictional amount; and (2) stipulated that her

the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

A district court's grant of a Rule 41(d) motion and related order of dismissal are reviewed for abuse of discretion. *See Duffy v. Ford Motor Co.*, 218 F.3d 623, 633 (6th Cir. 2000).

Rogers declares that she "merely wished to litigate her claims in state court" and relies on a couple of cases in which a court refused to award costs under Rule 41(d) because the court found no evidence of vexatious intent. *See Wahl v. City of Wichita*, 701 F.Supp. 1530, 1533 (D. Kan. 1988); *Sewell v. Wal-Mart Stores, Inc.*, 137 F.R.D. 28 (D. Kan. 1991). Rogers' claim of pure motive does not win the day because "nothing in the language of Rule 41(d) . . . suggests that a defendant must show 'bad faith' before a district court can order payment of costs incurred in a voluntarily dismissed previous action." *Esquival v. Arau*, 913 F.Supp. 1382, 1388 (C.D. Cal. 1996). In addition, Rogers fails to mention that Rule 41(d) is meant not only to prevent vexatious litigation, but also to prevent forum shopping, "especially by plaintiffs who have suffered setbacks in one court and dismiss to try their luck somewhere else." *See Robinson v. Nelson*, No. 98-10802-MLW, 1999 WL 95720, at *2 (D. Mass. Feb. 18, 1999). Hence, Rule 41(d) is also intended to prevent attempts to "gain any tactical advantage by dismissing and refiling th[e] suit." *Sewell v. Wal-Mart Stores, Inc.*, 137 F.R.D. at 29.

As Wal-Mart points out, Rogers did not seek to dismiss the initial action until after she had missed the court's deadline for disclosing her expert witnesses. This evidences at least some attempt to wipe the slate clean after an initial setback in federal court and gain a tactical advantage by re-filing in state court. Hence, the district court did not abuse its discretion in awarding costs of $185 to Wal-Mart.

Rogers also specifically contests the district court's inclusion of attorney fees as part of its award of "costs" under

that a stipulation might be binding should not determine whether it is effective to deprive the federal court of diversity jurisdiction. The same potential for forum shopping and manipulation exists whether or not a stipulation is binding. The same interests in efficiency and simplicity also exist where there is a binding stipulation. Hence, the reasoning that leads us to deny effect to post-removal stipulations generally, also leads us to deny effect to post-removal stipulations that are binding.[3]

Because state law would have allowed plaintiff to recover damages in excess of what she prayed for, it was "more likely than not" that her damages would exceed $75,000 given her previous demands and representations. Plaintiff's post-removal stipulation has no effect because jurisdiction is decided as of the time of removal. The district court did not err in denying plaintiff's motion to remand.

## III. The Award of Costs, Including Attorney Fees

The district court thoroughly examined Wal-Mart's itemized accounting of the costs and fees it incurred in defending against Rogers' earlier suit. The court awarded the full $185 in costs, but reduced the $1,888 of requested attorney fees by $306.45, to account for those fees which "remain[ed] of benefit in this matter[.]" The court ordered Rogers to pay Wal-Mart $1766.55. Rogers has contested this award of "costs" and the subsequent dismissal of her case.

Fed.R.Civ.P. 41(d) provides:

> If a plaintiff who has once dismissed an action in any court commences an action based upon or including

---

[3]The defendant has argued that its lack of approval means the stipulation is not binding. Other courts have treated such stipulations as binding nonetheless. *See, e.g.*, *Asociacion Nacional de Pescadores a Pequena Escala O Artesanales de Colombia v. Dow Quimica de Colombia, S.A.*, 988 F.2d 559, 565 (5th Cir. 1993), *cert. denied*, 510 U.S. 1041 (1994); *Adkins v. Gibson*, 906 F.Supp. 345, 348 (S.D. W.V. 1995). We find defendant's argument unconvincing and do not rely on it.

damages were under the required amount in controversy for diversity jurisdiction.

Neither of these facts suffices to require a remand to state court. This circuit has recognized a rule that the determination of federal jurisdiction in a diversity case is made as of the time of removal. *See Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). Hence, in reviewing the denial of a motion to remand, a court looks to "whether the action was properly removed in the first place." *Id.* (citing *Fakouri v. Pizza Hut of Am., Inc.*, 824 F.2d 470, 472 (6th Cir. 1987)). If one does not take into account plaintiff's post-removal stipulation, then there is no question that the district court was correct to deny the motion to remand because defendant showed that, at the time of removal, the amount in controversy was "more likely than not" above the $75,000 pleaded in plaintiff's complaint.[1]

Therefore, the main issue here is the effect, if any, of plaintiff's stipulation. The Seventh Circuit has held that a post-removal stipulation reducing the amount in controversy to below the required jurisdictional amount is ineffective to deprive a district court of jurisdiction. *See In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992). The court based its decision on *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938), in which the Supreme Court considered whether a post-removal amendment of a complaint could destroy diversity jurisdiction. In ruling that it could not, the *St. Paul* Court stated that "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." *Id.* at 290. On the strength of this rule, the *Shell Oil* court reasoned that "because jurisdiction is determined as of the instant of

---

[1]Plaintiff argues that if the amount prayed for in a complaint may be disregarded in determining the amount in controversy, it would "open the floodgates" to federal jurisdiction over any cases filed in state court. This argument has long since been settled by cases like *Gafford*, which establish tests for determining when a court can find jurisdiction despite a pleading that states an amount below the required level.

removal, a post-removal affidavit or stipulation is no more effective than a post-removal amendment of the complaint." 970 F.2d at 356; *see also Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 429 (7th Cir. 1997) ("because the stipulation came one month post-removal, [it was] too late for the court to consider").

Although no published opinion of this circuit has directly addressed the effect of a post-removal stipulation on diversity jurisdiction, in *Sanford v. Gardenour*, No. 99-5504, 2000 WL 1033025 (6th Cir. July 17, 2000), the court found there was jurisdiction even though the plaintiffs had stipulated after removal that "the amount they were seeking was less than $75,000." *Id.* at *2. The plaintiffs had made Rule 26 disclosures that the amount of damages was about $500,000. In addition, the plaintiffs' stipulation had not been binding—a fact the court used to distinguish its case from several district court cases that had given effect to a binding post-removal stipulation. *Id.* at *3. Also, in *Mitchell v. White Castle Sys., Inc.*, No. 94-1193, 1996 WL 279863 (6th Cir. May 24, 1996), although noting that the plaintiff had offered to file a post-removal stipulation, the court interpreted *St. Paul* as holding that "a post-removal stipulation has no effect on federal jurisdiction over the original complaint." *Id.* at **2 n.2.

We conclude that post-removal stipulations do not create an exception to the rule articulated in *St. Paul*. Because jurisdiction is determined as of the time of removal, events occurring after removal that reduce the amount in controversy do not oust jurisdiction. Therefore, consistent with *St. Paul* and previous unpublished Sixth Circuit opinions, we hold that a post-removal stipulation reducing the amount in controversy to below the jurisdictional limit does not require remand to state court. This rule is grounded not only in precedent, but also in sound policy. If plaintiffs were able to defeat jurisdiction by way of a post-removal stipulation, they could unfairly manipulate proceedings merely because their federal case begins to look unfavorable. Moreover, the interests of simplicity and uniformity dictate that post-removal stipulations be treated just like any other post-removal event.

Several district courts have given effect to binding, post-removal stipulations; however, we do not see merit in their reasoning. In *Moss v. Voyager Ins. Cos.*, 43 F.Supp.2d 1298 (M.D. Ala. 1999), the court distinguished cases from the Fifth, Sixth and Seventh Circuits on the ground that the stipulations in those cases had "failed to specifically bind the plaintiffs to accept no more in damages than the requisite jurisdictional amount." *Id.* at 1302; *see also Adkins v. Gibson*, 906 F.Supp. 345 (S.D. W.Va. 1995). Reaching the same result with different reasoning, the courts in *Bailey v. Wal-Mart Stores, Inc.*, 981 F.Supp. 1415 (N.D. Ala. 1997) and *Goodman v. Wal-Mart Stores, Inc.,* 981 F.Supp. 1083 (M.D. Tenn. 1997) ruled that the 1988 amendments to 28 U.S.C. § 1447(c) superseded the *St. Paul* rule that post-removal actions by the plaintiff cannot deprive a court of diversity jurisdiction.[2] Those courts reasoned that in changing § 1447(c), Congress was responding to *St. Paul*. Further, they interpreted the word "shall" in the newer version to mandate remand--even where the plaintiff reduces his demand three days before trial or merely amends his complaint rather than submits a stipulation. *Bailey*, 981 F.Supp. at 1415; *Goodman*, 981 F.Supp. at 1084; *see also Oder v. Buckeye State Mut. Ins.*, 817 F.Supp. 1413, 1414 (S.D. Ind. 1992).

Although these cases are interesting for their result, this circuit has already rejected the notion that the 1988 amendment to § 1447(c) directs district courts to look beyond the time of removal in deciding remand motions based on lack of jurisdiction. *Baldridge v. Kentucky-Ohio Transp., Inc.*, 983 F.2d 1341, 1348 & n.11 (6th Cir. 1993); *see also Fuller v. Exxon Corp.*, 78 F.Supp.2d 1289, 1297 n.16 (S.D. Ala. 1999) (discussing cases and concluding that the 1988 amendments do not supersede *St. Paul*). In addition, the fact

---

[2]The older version of § 1447(c) called for remand whenever the judge realized "that the case was removed improvidently and without jurisdiction." This subsection was changed to read: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."