**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 15a0427n.06

**Case No. 14-6064**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| | | **FILED** |
| | | Jun 09, 2015 |
| | | DEBORAH S. HUNT, Clerk |

VERONICA HAMPTON, )
)
    Plaintiff-Appellant, )
)
             ) ON APPEAL FROM THE
v. ) UNITED STATES DISTRICT
) COURT FOR THE EASTERN
SAFECO INSURANCE COMPANY OF ) DISTRICT OF KENTUCKY
AMERICA, )
)
    Defendant-Appellee. )
)

**O P I N I O N**

BEFORE: ROGERS and McKEAGUE, Circuit Judges; SARGUS, District Judge.[*]

    **McKEAGUE, Circuit Judge.** Veronica Hampton maintained insurance on her home through Safeco Insurance Company of America before it was destroyed in a fire. The parties dispute what she is owed under her policy and whether the district court had jurisdiction over her claim. Diversity jurisdiction was proper and the plain language of the contract limits Hampton to the amount she actually incurs to repair or replace the property. That amount is owed only after she has repaired or replaced the property, which she has failed to do. We therefore affirm.

---

[*]The Honorable Edmund A. Sargus, Jr., Chief Judge of the United States District Court for the Southern District of Ohio, sitting by designation.

On December 5, 2011, a fire severely damaged Veronica Hampton and her husband's London, Kentucky home. R. 1-1, Complaint, Page ID #13–78. One provision in her insurance policy with Safeco provides for "replacement costs:" Safeco pays the difference between the "replacement cost" and the "actual cash value" of the home. The parties agree that the actual cash value of her home was $62,500. Pursuant to that provision, Hampton requested the property's actual cash value, and Safeco made that $62,500 payment on March 26, 2012.

A few months later, Hampton contacted Safeco indicating that she planned to replace the insured home with a mobile home quoted at $66,729.12. She submitted a receipt showing a $500 deposit as proof of her "intent" to replace. *See* R. 1-1, Invoice, Page ID # 67. Safeco responded indicating that pursuant to the policy's replacement cost provision, it would pay the difference between that replacement cost of $66,729.12 and the actual cash value of $62,500 already paid, or $3,229.12. R. 1-1 at 65. Hampton insisted that she was owed $45,245: the difference between the estimated cost to replace the home that was destroyed, $108,745, and its actual cash value, $62,500.

Hampton sued Safeco in Kentucky state court seeking her interpretation of replacement costs under the policy. R. 1-1. At that point, the parties attempted unsuccessfully to stipulate to damages. R. 9, Memo, Page ID # 447. Safeco then removed the case to district court and Hampton moved to remand. *Id.* The district court denied that motion, holding that Safeco had shown diversity jurisdiction was proper. *Id.* Safeco then moved for, and the district court granted, summary judgment in Safeco's favor. R. 42, Order, Page ID # 969. Hampton appealed.

As a threshold matter, Hampton challenges the district court's diversity jurisdiction, claiming that the amount in controversy was lacking under 28 U.S.C. § 1332. "We review *de novo* the existence of subject matter jurisdiction as a question of law." *Rogers v. Wal-Mart*

*Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). Federal district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a). The amount claimed by the plaintiff usually controls, but the defendant can remove the case under 28 U.S.C. § 1441(a) if it is shown that the amount in controversy is "more likely than not" above $75,000. *Rogers*, 230 F. 3d at 871; *see also In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir.1992).

Jurisdiction is evaluated at the time of removal. *Rogers*, 230 F.3d at 872. In calculating the amount in controversy for diversity jurisdiction, courts can consider punitive damages, *Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir. 1990), and statutorily-authorized attorney fees, *Clark*, 518 F.2d at 1168–69; *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 377 (6th Cir. 2007). In this context, subsequent events, "whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938). This includes post-removal stipulations. *Rogers*, 230 F.3d at 871.

The district court did not err in concluding that Safeco met its burden. Hampton sought damages under the policy contract amounting to $66,729.12 under the replacement cost provisions or the difference between her policy limits and $62,500 already paid out as the actual cash value of her home, $45,345, whichever was less. On top of that, she sought increased interest under KRS § 304.12-235. As the district court recognized, at 12% per annum, the total damages including interest would amount to about $60,000. She also sought attorney's fees under KRS § 304.12-234 to accrue beginning November 23, 2012. R. 1-6, Notice of Removal, Page ID # 90–93. Finally, she sought punitive damages under Kentucky's Unfair Claims

Settlement Practice Act, KRS § 304.12-230. *Id.* These figures confirm that the sum was likely to amount to over $75,000.[1]

Hampton's arguments against jurisdiction are unconvincing. First, Hampton cites her indication during discovery that she would limit her demand to increased interest and attorney's fees to those permitted under KRS § 360.010. Under that provision, she argues, the interest rate would be 4%. However, her complaint explicitly demands attorney's fees under KRS § 304.12-235, a 12% interest rate, not the lower rate that she alleges applies under KRS § 360.010. Second, she cites her alleged offer to file a stipulation recognizing a limit on her recovery. *See* R. 4-9, Memo, Page ID # 290–93. But we evaluate jurisdiction at the time of removal and the alleged stipulation offer does not affect jurisdiction once it has attached. *Rogers*, 230 F.3d at 871. Finally she contends that if the matter can be resolved in a "reasonably expedient manner," attorney's fees should not exceed $5,000. Appellant's Reply Br. at 6–7. Her speculation does not change our conclusion that Safeco has met its burden. Because Safeco has shown that the amount in controversy is "more likely than not" above $75,000, diversity jurisdiction was proper.

Holding diversity jurisdiction proper, we move to the merits of the contract dispute. We apply Kentucky substantive law to the contract claims. *Shrowpshire v. Leidlaw Transit, Inc.*, 550 F.3d 570, 573 (6th Cir. 2008) (citing *Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938)). Under Kentucky law, the interpretation of provisions in an insurance contract is an issue of law for the court to decide. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010). When an insurance contract provision is unambiguous "the ordinary meaning of the words chosen by the insurer is to be followed." *State Farm Mut. Auto. Ins. Co. v. Slusher*, 325

---

[1] The parties do not address whether the increased interest should be included when calculating the amount in controversy. Subject to some exceptions, the diversity jurisdiction statute excludes "interests and costs" from the amount in controversy. 28 U.S.C. § 1332. Because even without including the increased interest it appears more likely than not that the amount in controversy exceeds $75,000, we do not decide this question.

S.W.3d 318, 322 (Ky. 2010) (citing *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007)).

The first issue pertains to what amount Safeco must pay under the "replacement cost" provision. According to the agreement, replacement cost is limited by "the full amount actually and necessarily incurred to repair or replace the damaged building as determined shortly following the loss." R. 22-2, Policy, Page ID # 580. Hampton claims that she "reasonably expected" that "'replacement cost' coverage would be there to use toward restoring a normal life after a devastating fire." Appellant's Reply Br. at 6. Her argument is not compelling. The plain and ordinary meaning of the provision explicitly limits recovery to those costs "actually and necessarily incurred." Actual costs cannot fairly be said to include an estimate of the cost of rebuilding her former home. They are limited to *actual costs*: costs actually incurred in rebuilding or replacing that home. This provision cannot be read to permit plaintiffs to purchase a less expensive home and then claim the difference between that replacement house and the estimated rebuilding price in cash. The provision unambiguously limits recovery to costs actually incurred and Hampton's argument accordingly fails.

The second issue is whether purchasing a new home is a prerequisite to payment and whether Safeco's refusal to pay the price of the mobile home constitutes anticipatory breach. Hampton argues that she is entitled to payment even though she has not yet purchased the mobile home. The policy reads: "we will pay the difference between actual cash value and replacement cost only when the damaged or destroyed property is repaired or replaced." R. 22-2, Policy, Page ID # 580. The language is clear on its face and requires the insured to replace the property before payment is made. A stated intention to purchase the mobile home, a quote estimating the price of the replacement property, and a receipt showing a deposit are irrelevant. Hampton

effectively asks for an advance payment for costs of replacement not contemplated by the policy language.  Hampton is therefore not owed replacement costs until she repairs or replaces the property.  Because Hampton was not owed the replacement cost until she replaced the property, her argument that Safeco's refusal to pay constitutes an anticipatory breach likewise fails.

For these reasons, we affirm.