RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0250p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RANDY ROBERTS,

*Plaintiff-Appellant,*

*v.*

MARS PETCARE US, INC.,

*Defendant-Appellee.*

No. 17-6122

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:17-cv-00043—Pamela Lynn Reeves, District Judge.

Argued: October 31, 2017

Decided and Filed: November 2, 2017

Before: GIBBONS, SUTTON, and THAPAR, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Charles Barrett, NEAL & HARWELL, PLC, Nashville, Tennessee, for Appellant.
Xiao Wang, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellee. **ON BRIEF:**
Charles Barrett, NEAL & HARWELL, PLC, Nashville, Tennessee, Gordon Ball, GORDON
BALL, PLLC, Knoxville, Tennessee, for Appellant. Xiao Wang, WILLIAMS & CONNOLLY
LLP, Washington, D.C., R. Dale Grimes, Russell E. Stair, BASS, BERRY & SIMS PLC,
Nashville, Tennessee, for Appellee.

_____

### OPINION

_____

SUTTON, Circuit Judge. The Class Action Fairness Act of 2005 extends federal court
jurisdiction to class actions on behalf of 100 or more people and in request of $5 million or more

in damages so long as "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), (d)(5), (d)(6). At issue is the quoted phrase. Randy Roberts filed this class action on behalf of Tennessee citizens in Tennessee state court against Mars Petcare US, a citizen of Tennessee and Delaware. Mars removed the case to federal court, invoking its Delaware citizenship and claiming its Tennessee citizenship did not matter. Because § 1332(d)(2)(A) refers to all of a defendant's citizenships, not the alternative that suits it, Mars cannot rely on its State of incorporation (Delaware) and ignore its principal place of business (Tennessee) to create diversity under the Act. We reverse the district court's denial of the plaintiff's motion to remand the case to state court.

On January 11, 2017, Roberts filed this class action against Mars in a Tennessee state court. He alleged that Mars conspired with other pet food manufacturers, veterinarian chains, and a retailer to employ a "prescription-authorization requirement" to sell pet food at above market prices in violation of the Tennessee Trade Practices Act.

Roberts is a citizen of Tennessee, and he filed this lawsuit on behalf of other Tennessee citizens. Mars is incorporated in Delaware and headquartered in Tennessee. On February 9, 2017, Mars removed the case to the Eastern District of Tennessee, invoking the court's diversity jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332(d). Roberts filed a motion to remand, which the district court denied. We granted Roberts' petition for permission to appeal.

The Class Action Fairness Act, often called CAFA, amended the diversity statute to extend the jurisdiction of federal courts from class actions between "citizens of different States" to those in which "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(a)(1), (d)(2)(A). Under § 1332(a)(1), the traditional grant of diversity jurisdiction, all plaintiffs must be citizens of States different from all defendants. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). But under CAFA, federal courts may hear class actions with minimal diversity, such that only one plaintiff and one defendant need be citizens of different States, so long as there are 100 or more class members and an aggregate amount in controversy of at least $5,000,000. 28 U.S.C. §§ 1332(d)(2)(A), (d)(5), (d)(6). As always, the removing defendant bears the burden of establishing federal court jurisdiction. *See* 28 U.S.C. § 1441(a); *Rogers v. Wal-Mart Stores*, 230 F.3d 868, 871 (6th Cir. 2000).

Incorporated in Delaware and headquartered in Tennessee, Mars is a citizen of both States. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). Mars' dual citizenship prompts this question: Does CAFA grant jurisdiction over a class action brought by a group of Tennessee citizens against a company that is a citizen of both Tennessee and Delaware?

Plucked from context, the language of the statute could support Mars just as easily as it could support Roberts. The reference to "a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A), does not tell courts whether to count a company defendant's plural citizenships or the single citizenship it invokes. If we treat Mars as a citizen of Tennessee and Delaware, the district court lacked jurisdiction. But if we treat Mars as a citizen of Tennessee or Delaware, the district court had jurisdiction. Nothing about the words of the law, examined in isolation, points to one answer or the other.

But statutory context provides the necessary steering. Two of the provision's statutory neighbors say that a corporation is a citizen of the State in which it was incorporated *and* the State of its principal place of business. 28 U.S.C. §§ 1332(a)(1), (c)(1). Ever since the passage of § 1332(c)(1) in 1958, courts have considered corporations simultaneously citizens of both States for diversity purposes. So it is that a federal court has no jurisdiction to hear a case between a citizen of a State and a corporation headquartered in the same State under the ordinary grant of diversity jurisdiction in § 1332(a)(1), even if the corporation is incorporated elsewhere. *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 629 (6th Cir. 1992). Nothing in the 2005 statutory amendments provided by CAFA changes the rule that a corporation is a citizen of its state of incorporation *and* its principal place of business.

Historical context reinforces this conclusion. From the beginning, diversity jurisdiction sought to protect out-of-state parties from the potential risk that local juries (or judges) would favor in-state parties. *See* Charles Warren, *New Light on the History of the Federal Judiciary Act of 1789*, 37 Harv. L. Rev. 49, 83 (1923). Madison, for one, worried that "a strong prejudice may arise, in some states, against the citizens of others, who may have claims against them." 3 The Debates in the Several State Conventions on the Adoption of the Federal Constitution 533 (Jonathan Elliot ed., 2d ed. 1901). Hamilton, for another, believed that cases between citizens of different States should be heard by a federal court "likely to be impartial between the different

States and their citizens, and which, owing its official existence to the Union, will never be likely to feel any bias inauspicious to the principles on which it is founded." The Federalist No. 80, at 497 (Alexander Hamilton) (Henry Cabot Lodge ed., 1889).

That traditional function of the diversity statute supports this interpretation here. It is difficult to say that Wal-Mart, to use one example, would face prejudice in an Arkansas state court or that Coca-Cola, to use another, would find a hostile audience in Georgia merely because each company was incorporated in Delaware. So also here: A Tennessee state court is the proper forum for this lawsuit against a company with its principal place of business in Tennessee.

Sure, Congress passed CAFA to provide greater access to a federal forum for interstate class actions of national importance. Class Action Fairness Act of 2005, Pub. L. 109–2, § 2, 119 Stat. 4. But when it put that purpose into words, it did so in straightforward ways, some of which altered class action law and some of which left it unchanged. Before CAFA, federal courts did not exercise jurisdiction over cases in which even a single plaintiff was from the same State as a single defendant. *See Strawbridge*, 7 U.S. (3 Cranch) 267. After CAFA, federal courts may hear class actions involving (1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, and (3) minimal diversity such that at least one plaintiff and one defendant are citizens of different States. 28 U.S.C. §§ 1332(d)(2)(A), (d)(5), (d)(6). No such precision, or even linguistic hints in § 1332(d)(2)(A), shows that Congress, in enacting CAFA, sought to overrule decades of precedent by re-envisioning the core concept of corporate citizenship. To believe Mars, one must believe that CAFA granted federal jurisdiction over class actions against two-thirds of all publicly traded companies in the United States as long as the lawsuit is filed outside of Delaware. *Division of Corporations*, State of Delaware, https://corp.delaware.gov/aboutagency.shtml. That would significantly alter the balance between federal and state courts. Congress does not ordinarily hide animals that big in dens so small. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

Mars' interpretation of § 1332(d)(2)(A), for what it is worth, also would require us to resolve an unsettled constitutional question. Article III extends federal jurisdiction to controversies "between citizens of different States." U.S. Const. art. III, § 2. By claiming that

CAFA grants jurisdiction between citizens of the *same* State, Mars takes us up to the frontier of this constitutional boundary. As the Supreme Court has noted, "[i]t is possible, though far from clear, that one can have opposing parties in a two-party case who are co-citizens, and yet have minimal Article III jurisdiction because of the multiple citizenship of one of the parties." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 577 n.6 (2004). Happily for us, § 1332(d)(2)(A) does not pose this "far from clear" constitutional question.

We have ample company in holding that § 1332(d)(2)(A) incorporates dual, not alternative, citizenship for corporations. All other courts of appeals to consider the issue have reached the same conclusion. *Life of the S. Ins. Co. v. Carzell*, 851 F.3d 1341, 1344–46 (11th Cir. 2017); *Johnson v. Advance Am.*, 549 F.3d 932, 935–36 (4th Cir. 2008); *see also In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 78 n.2 (1st Cir 2009) (expressing skepticism of alternative citizenship). And leading treatises on the subject suggest the same result. *See Expanded Federal Court Jurisdiction over Multistate Actions*, 2 McLaughlin on Class Actions § 12:6 (14th ed. 2017); *see also* Wright & Miller, *Diversity Jurisdiction in Actions Involving Corporations*, 13F Fed. Prac. & Proc. Juris. § 3624 (3d ed. 2017).

Mars offers some alternative sources of jurisdiction even if we treat Mars as a citizen of Tennessee. It notes that Roberts' complaint defines the putative class as "all persons in the State of Tennessee who purchased Prescription Pet Food manufactured by Mars," a category that, standing alone, includes non-Tennessee citizens. R. 1-1 at 26. In the same vein, Mars argues that Roberts' complaint states only that he is a resident of Tennessee and not a citizen of the State. All true. But we must read the complaint as a whole and draw all reasonable inferences in the plaintiff's favor. *See Stratton v. Portfolio Recovery Assocs.*, 770 F.3d 443, 446 (6th Cir. 2014). Unlike *Broadway Grill* and other like-reasoned cases on which Mars relies, this complaint later says that "[t]he proposed Class is strictly limited to citizens of Tennessee." R. 1-1 at 6; *see Broadway Grill, Inc. v. Visa, Inc.*, 2016 WL 4498822, at *4 (N.D. Cal. Aug. 29, 2016). And in other parts of the complaint, it seeks relief on behalf of "a Tennessee class" and "similarly situated Tennessee consumers." R. 1-1 at 6, 15. Read as a whole, the complaint imposes two conditions on the putative class members: that they are Tennessee citizens and that

they purchased prescription pet food from Mars.  Because the complaint restricts the putative class to Tennessee citizens, Mars cannot satisfy CAFA's minimal diversity requirement.

Mars adds that Roberts has sued the wrong subsidiary of Mars, Inc., because Royal Canin, not Mars Petcare US, manufactured the pet food Roberts purchased.  Because Royal Canin is headquartered in Missouri, an identical class action against Royal Canin would satisfy § 1332(d)(2)(A).  But even after CAFA, plaintiffs remain the masters of their claims and can choose whom they want to sue.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987).  Roberts chose to sue Mars Petcare US, not Royal Canin.  And Roberts has alleged that Mars, not Royal Canin, marketed and sold the pet food at issue.  Perhaps he is wrong.  Or perhaps he is right but has a stronger antitrust claim against Royal Canin than Mars Petcare.  We cannot say based on the slim record before us.  But we do not need to say because these questions go to the merits of the case.  If Mars is right, the company has nothing to worry about, as the state court will either quickly dismiss the claim or join Royal Canin, making the case properly removable to federal court.  *See* 28 U.S.C. § 1446(b)(3).

One other possibility exists.  We may look beyond a complaint if a plaintiff fraudulently joins non-diverse defendants in order to defeat removal.  *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).  But this possibility requires proof that the plaintiff has no colorable claim against the non-diverse defendant under state law.  *Id.*  No one can say that Roberts joined Mars to this lawsuit in order to defeat diversity because he did not *join* Mars at all.  Roberts named Mars as the original defendant in the lawsuit, and it remains the only defendant in the lawsuit.  On top of that, Roberts has alleged that Mars conspired with pet food manufacturers, veterinary clinics, and a retailer to sell prescription pet food at above-market prices.  If true, the allegations establish a per se violation of the Tennessee Trade Practices Act.  Tenn. Code Ann. § 47-25-101.  That is a colorable claim against Mars.  We see no evidence of fraud here even if Royal Canin faces similar allegations in a class action elsewhere.  First Amended Complaint at 4–5, *Moore v. Mars Petcare US, Inc.*, No. 3:16-cv-07001-MMC (N.D. Cal. Feb. 16, 2017).

Nor can the district court exercise its power under Civil Rule 19 to join Royal Canin to the lawsuit in order to create federal court jurisdiction.  On its face, Civil Rule 19 contemplates pre-existing federal court jurisdiction:  It speaks of "joinder that will not deprive the court of

subject-matter jurisdiction." Civil Rule 19(a)(1)(A). More fundamentally, diversity jurisdiction must exist at the time of removal. *Rogers*, 230 F.3d at 871. An act of joinder under Rule 19 would itself be an exercise of federal court jurisdiction. In the absence of jurisdiction over the existing lawsuit, a district court has no power to join another party to the proceeding. *See Vill. of Oakwood v. State Bank & Tr. Co.*, 481 F.3d 364, 367 (6th Cir. 2007). Recognizing that fraudulent joinder would accomplish little, Mars in essence seeks to create a new fraudulent *non-joinder* doctrine. But we have no authority to do so.

Because Mars has not demonstrated the minimal diversity required by § 1332(d)(2)(A), we need not address Roberts' argument that the home-state exception in § 1332(d)(4)(B) applies to this case. For these reasons, we reverse and remand to the district court for further proceedings consistent with this opinion.