NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0251n.06
Filed: May 8, 2008

No. 07-5734

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

DAVID EARLY, Administrator of the Estate of
Joshua Early, Deceased; KAREN MULLINS,
Administratrix of the Estate of Timothy Mullins,
Deceased; BRIDGETT STIVERS, Guardian of the
Estate of Thomas Blake Stivers,

      Plaintiffs-Appellants,

        v.

TOYOTA MOTOR CORPORATION; TOYOTA
MOTOR SALES, U.S.A., INC.,

      Defendants-Appellees.

On Appeal from the United
States District Court for the
Eastern District of Kentucky
at Frankfort

_____/

**Before:**     **GUY, SUHRHEINRICH, and COLE, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**    This is a products liability case arising from

the deaths of Joshua Early and Timothy Mullins, Kentucky citizens who were poisoned by

carbon monoxide in the cab of an idling 1994 Toyota pickup truck on April 26, 2003.

Plaintiffs claim that a defective seal around the truck's steering column allowed a fatal

quantity of exhaust fumes into the cab of the truck. The issues on appeal are the district

court's (1) decision, after a *Daubert* hearing, to exclude plaintiffs' expert witness, and (2)

order foreclosing plaintiff's plan to pursue certain evidence. Because we find no error in

either the district court's evidentiary rulings or its subsequent entry of summary judgment for defendants, we affirm.

## I.

Friends Joshua Early and Timothy Mullins, both residents of Shelbyville, Kentucky, died the morning or early afternoon of April 26, 2003, while resting or sleeping in the cab of Early's idling Toyota pickup truck with the windows rolled up. It appears that Early, who was in the driver's seat, had stopped the truck at a rest stop along Interstate 64 en route from a late night in Louisville to the men's hometown of Shelbyville. The truck was in a parking spot, with Early's and Mullins's seats both reclined. A rest-stop worker reported that she noticed the car when she came to work that morning, and assumed the men were sleeping. In the early afternoon, the employee checked on the car and notified her supervisor that she had tried to rouse the men but could not. An emergency response team was alerted and arrived to confirm their deaths. A strong smell of exhaust was present when a door to the vehicle was opened, and the carbon monoxide level inside the truck was later determined to have been 400 parts per million, which plaintiffs highlight is 20 times that permitted by Toyota engineering standards.

Autopsies were performed on both bodies, which confirmed that the cause of death was carbon monoxide poisoning. The investigation performed by Kentucky State Police revealed that the engine of the truck had a significant exhaust leak at the joint between the manifold and the exhaust downpipe.[1] That leak was located approximately nine or ten inches

---

[1]The record indicates Early was aware of this problem, and plaintiffs acknowledge that "some fault [would] likely be apportioned against [Early]" for this reason.

from the point where the steering column comes through the "firewall," or the sheet of steel dividing the engine compartment from the cab of the truck. At its point of entry into the cab, the steering column is surrounded by a rubber-like "dust seal," made of an elastomeric polymer generally called "NBR." The dust seal in Early's pickup was torn or separated, and toxic quantities of the leaking exhaust passed through the opening around the steering column into the passenger compartment. The 1994 pickup's odometer registered 209,000 miles, and the truck had previously been involved in a front-end collision. Plaintiffs' lawsuit asserted that the pickup was defective due to the alleged faulty dust seal, and that defendants did not use reasonable care in selecting the material for the dust seal or in monitoring its useful life.

Plaintiffs retained a mechanical engineer, Jay Nogan, to support their claims. He issued an October 14, 2005 report and was deposed by defendants on December 15, 2005. Nogan opined that the dust seal's failure was due to defendant Toyota's choice of materials for its seal, and that there were probably many Toyota vehicles with identical dust seals in a condition similar to that of the subject truck's seal. He acknowledged that he had neither performed nor commissioned any actual testing on the Early truck's seal.[2] Nogan's file contained a letter from plaintiffs' co-counsel, Richard Head, written October 23, 2003. In the letter, Head made requests of Nogan to arrange for a "controlled removal" of the dust seal in another Toyota pickup truck, stating that the other pickup's dust seal had a "similar

---

[2]It appears that the relevant testing would have involved a finite element analysis, which plaintiffs' counsel at one point stated was "prohibitively expensive," but later requested extra time to conduct.

failure" to the Early dust seal. Defendants' counsel asked Nogan about the letter, and Nogan stated that he had not performed these activities.

Defendants' experts asserted that the condition of Early's dust seal was due to either the steering column's misalignment following the earlier front-end collision, and/or a significant increase in engine compartment temperature caused by the leaking exhaust. One Toyota employee and expert, Mark W. Jakstis, stated there was no relationship between miles driven and the life of the dust seal. Plaintiffs point out that the record includes evidence that the truck was in reasonable condition given its age and mileage.

The first scheduling order in the case was issued in August 2004. These dates were extended and/or changed no less than five times before the case was reassigned from Judge Hood to Judge Caldwell on January 6, 2006. Judge Caldwell entered an agreed-upon order rescheduling trial and pretrial deadlines on April 25, 2006. The order established a discovery deadline of June 8, 2006; a dispositive motion cutoff of June 15, 2006; and a trial date of November 6, 2006, with a pretrial conference in October.

Defendants assert that as a result of Nogan's deposition, in an effort to follow up on the notion that plaintiffs were examining dust seals from other Toyota pickups, they sent a discovery request to plaintiffs on the subject. On January 4, 2006, defendants issued a Supplemental Interrogatory and Request for Production of Documents, asking about any information plaintiffs had concerning "similar failure" of Toyota dust seals. As discussed below, plaintiffs did not respond to this request until well after the close of discovery. Just prior to the June discovery deadline, plaintiffs sent letters to a number of Kentucky owners

of similarly aged Toyota pickups. In the letters, plaintiffs' counsel identified the Early litigation, instructed the owners on how to examine their dust seals, and offered to replace any that showed wear or deterioration. On June 29, 2006, defendants filed a motion for (1) protective order and (2) to exclude any such evidence, arguing that the efforts were untimely, that plaintiffs had not answered the January 2006 discovery request on the topic, and that evidence acquired in response to the letters would likely lead to significant amounts of additional discovery and litigation which could not be completed in time for a November 2006 trial date. At this point the case had been pending for over two years.

A hearing on defendants' motions was scheduled for July 31, 2006. Just prior to the hearing, plaintiffs answered the January discovery requests with information about the letter sent to Kentucky Toyota pickup owners and the responses they had received. At the hearing, plaintiffs acknowledged that their recent discovery efforts "should have been done earlier," but argued that the additional discovery was aimed at rebutting defendants' experts' opinions. Defendants asserted that if the plaintiffs were allowed to pursue the evidence of other trucks' seals as desired, the scope of work in the case would be "quite significant," and that as to each other vehicle identified they would

> have to do a full lawsuit's worth of discovery, because we need to inquire and investigate into the background of each of those vehicles because their repair histories, their service histories, their accident histories will be very important to our client in making sure we adequately respond to the plaintiffs' evidence relating to those other seals.

Defendants' counsel predicted the need to take numerous depositions—of any current and former owners—and asserted that defendants would be entitled to attend the removal and

examine any dust seal removed. He also asserted additional work that would be required if the court denied defendants' motion. Defendants concluded by stating that the "evidence could have and should have been gathered long ago." Plaintiffs asserted that, as a matter of fairness, the evidence was needed for the case, conceded that there had been no testing of dust seals to date, and stated that the evidence would be offered for the limited purpose of supporting their expert's opinion.

When the court questioned why the expert did not get supporting data *before* he opined on causation, plaintiffs' counsel's only answer was that Nogan considered the rubber used for the Toyota pickup dust seals, and concluded that many of the seals would not "last this long because of the type of rubber that they used. There are rubbers that can be used that are—will last longer and can withstand higher temperatures." Plaintiffs' counsel alternatively asserted that the evidence was required to respond to defendants' expert Dr. Caulfield, who had a diametrically opposed view to that held by Nogan and who had been deposed on June 7, 2006, one day before the discovery cutoff. In rebuttal, defendants' counsel pointed out that plaintiffs' letters had actually gone out two days *before*, rather than after, Caulfield was deposed. He highlighted Head's letter sent to Nogan prior to the filing of the case, in October 2003, which he argued demonstrated that plaintiffs' counsel was considering looking at other trucks' seals almost three years earlier, but nothing had been done until a few days prior to discovery's close.

Ultimately, the court took the matter under advisement, stating that "the timeliness of [plaintiffs' actions] is disturbing. But really, what I'm concerned about is whether or not this

is an appropriate avenue for discovery and whether or not it could be managed in a way that would ultimately result in admissible evidence at trial."

While the motions for protective order and to exclude were pending, defendants filed their motion to exclude Nogan's testimony and opinions. Plaintiffs secured an extension to respond to the motion, and they requested a hearing pursuant to Fed. R. Evid. 104 concerning the admissibility of Nogan's testimony. On October 11, 2006, plaintiffs filed a motion for continuance of six months to allow them to contact Toyota pickup truck owners in Shelby County, and to conduct finite element analysis of the Early dust seal. The court held a *Daubert* hearing on the issue of Nogan's testimony on October 12, 2006. Later that month, the court issued an order continuing the trial and any remaining deadlines without date, pending further order of the court. The court ordered a transcript of the October 12 hearing, which it received on March 27, 2007, and two days later it issued its order granting defendants' motion to exclude Nogan's testimony at trial. In summary fashion, at the end of its order, the court denied as moot plaintiffs' motion for expert evaluation of exemplar vehicles as well as defendants' motion for protective order.

After this ruling, defendants moved for summary judgment, which was essentially uncontested by plaintiffs. The court granted the motion on May 16, 2007, dismissing the case with prejudice, and plaintiffs filed their notice of appeal on June 14, 2007.

## II.

Plaintiffs' claims on appeal address (1) the district court's decision to exclude Nogan; (2) the foreclosure of their efforts to collect evidence of similar trucks' dust seals; and (3) the

district court's entry of summary judgment for defendants, which are addressed in that order, below.

**A.      Exclusion of Jay Nogan**

We review the decision of a district court to admit or exclude expert evidence under an abuse of discretion standard. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999), *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). This standard is highly deferential to the determination of the district court, *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 267 (6th Cir. 2001), and an abuse of discretion is found only when we are "firmly convinced that a mistake has been made." *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*, 388 F.3d 976, 980 (6th Cir. 2004).

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire* established the procedure for admitting expert opinion testimony under the Federal Rules of Evidence. An expert must be qualified "by knowledge, skill, experience, training, or education," and his or her testimony may be admitted if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. *Kumho Tire* described the district court's "gatekeeping" role pronounced in *Daubert*: "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. *See also Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).

Here, the district court identified the subject areas—design defects and warnings—in which plaintiffs sought to offer expert testimony from Nogan. It looked to *Daubert* and *Kumho Tire's* standards for the admission of expert opinion testimony, stating that it was required to find that Nogan was qualified to offer his opinions and that those opinions were reliable.[3] Finding Nogan to be unqualified and his opinions to be unreliable, the district court granted defendants' motion to exclude.

Concerning his qualifications, the district court noted that Nogan's degree in mechanical engineering was not bolstered by any engineering license, particular experience in automotive design or manufacturing, or experience in "designing, installing, or researching any kind of automotive engine seal," and that Nogan had not worked on any case involving dust seal composition or longevity. The court considered his experience working for HPS, Inc., "a small company that manufactured hydraulic components, electrical components, and a series of traffic waterways used on fire trucks," where Nogan "received on-the-job training regarding the installation and servicing of seals in varied mechanical applications," but largely identified HPS products suitable to specific needs. The court also reiterated Nogan's testimony concerning his usage of the "Military Handbook 695" and the "Parker O-Ring Guide" for guidance on storage conditions and longevity of a variety of polymer seals. Concerning warnings, the district court found that Nogan had not written or reviewed any

---

[3]*Daubert*'s non-exclusive factors to consider in making a reliability determination include "1) whether the expert's scientific technique or theory can be, or has been, tested; 2) whether the technique or theory has been subject to peer review and publication; 3) the known or potential rate of error of the technique or theory when applied; 4) the existence and maintenance of standards and controls; and 5) whether the technique or theory has been generally accepted in the scientific community." *U.S. v. Beverly*, 369 F.3d 516, 528 (2004) (citing *Daubert*, 509 U.S. at 592-93).

owner's or repair manuals for any product, had never created a maintenance schedule for an NBR seal, and made no assertion that he was an expert on warnings. For these reasons, the district court was understandably convinced that "nothing in Nogan's educational or professional background qualifie[d] him as an expert regarding either design defects or warnings."

In its subsequent consideration of the reliability of Nogan's opinions, the district court noted that Nogan examined the dust seal only after it had been removed from the 1994 pickup. He observed that the seal was torn, but did not ascertain the reason and did not consider the truck's previous front-end collision before April 2003. As defendants point out, while Nogan opined that the distance between the exhaust leak and the dust seal was between 24 and 48 inches, in fact the distance was nine or ten inches. He admitted that he was unfamiliar with the material used for the dust seal, and did not examine service records or any exemplar vehicle.[4] Nogan also conceded he had not run any tests to support his conclusion that an alternative material would have been better for the dust seal.

The district court's reasoning best explains why Nogan's proffered opinions were properly excluded:

> [I]n this case, Mr. Nogan didn't consider anything other than the recommended shelf life of various polymer seals as referenced in a military handbook. Stunningly, he arrived at this conclusion without even knowing the precise composition of the dust seal or its purpose in the mechanical operation of the Toyota pick-up.

---

[4]Nonetheless, he concluded that the dust seal was original equipment.

Nogan admitted that overheating and other stressors could have damaged the seal, but did not conduct or commission any kind of finite element analysis that would enable him to discern whether any excessive force beyond normal stressors were applied to the dust seal during its life in the vehicle. He admitted that he had no idea as to the normal operating temperature in the area of the dust seal, but maintained that the seal had not been overheated.

Nogan also admitted that in formulating his original opinion in the case, he did not offer any alternative design for the dust seal. Moreover, he admitted that he had not run any experiments or test to determine whether some alternative would have performed better under any set of conditions.

At the end of the day, this expert looked at the seal, noted that it had a tear, and without any testing, concluded that it had not been damaged by heat. He failed to consider any abnormal engine stressors including a front-end collision that may have adversely affected the performance of the dust seal. Without knowing the history of the vehicle or precise composition of the dust seal in question, Nogan simply consulted a military reference book regarding the relative shelf life of military polymer seals to conclude that Toyota should have used another polymer compound in designing the seal. Yet, he offers no alternative.

(Footnote omitted.) The district court carefully considered the lack of testing and specific expertise behind Nogan's opinion, *see Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007), and correctly served its gatekeeping function in evaluating the reliability of the proposed evidence. Therefore, regardless of Nogan's qualifications, we find no abuse of discretion by the district court in determining that Nogan's opinion did not "pass muster under a single *Daubert* criterion."

B.    **Foreclosure of Plaintiffs' Discovery and Grant of Summary Judgment**

At the conclusion of its ruling excluding Nogan's testimony, the district court included summary rulings denying defendants' motion for protective order concerning plaintiffs'

intended pursuit of similar Toyota dust seals as well as plaintiffs' motion for an additional

six months to pursue the desired discovery.[5]

This was not improper. As defendants argued in their motion for summary judgment,

citing *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35 (Ky. 2004), plaintiffs had the

requirement of proving by "competent expert testimony that (1) the vehicle contained an

identifiable defect that rendered it unreasonably dangerous as designed; (2) the plaintiffs'

damages were caused by the claimed defect, as opposed to other causes such as normal wear

and tear or owner neglect; and (3) a feasible safer alternative design existed which, if

utilized, would have prevented the injuries." Without an expert, any pursuit of the evidence

sought by plaintiffs—regardless of its timeliness—would have been moot.

Although plaintiffs' brief implies they harbor some hope this court will allow them

to "replace" Mr. Nogan, they concede that without him "or some other expert in seals, they

cannot meet their burden of proof in [sic] the issue of liability." Yet plaintiffs have made no

claim that the district court improperly denied the admission of *some other* proposed expert's

---

[5]The court wrote:

> 2.     Having excluded Nogan's testimony, the Court will deny
> plaintiff's motion for additional time for expert evaluation
> of exemplar vehicles [R. 56] as both untimely and moot.
>
> 3.     Toyota's Motion for Protective Order [R. 33] is hereby
> denied as moot.
>
> Dated this 29th day of March, 2007.
>
>                Signed By:
>                /s/
>                Karen K. Caldwell
>                United States District Judge

testimony, and thus we find that the district court's rulings on the protective order and the motion for continuance do not constitute an abuse of discretion. Accordingly, and as conceded by plaintiffs, defendants' motion for summary judgment was properly granted by the court.

**AFFIRMED**.