**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0567n.06

No. 17-6403

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 08, 2018
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| SCOTT HALSEY and KIMBERLY HALSEY, | ) |
| | ) |
| Plaintiffs-Appellants, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF KENTUCKY |
| AGCO CORPORATION and TITAN TIRE | ) |
| CORPORATION, | ) |
| | ) |
| Defendants-Appellees. | ) |
| | ) |
| | ) |

Before: COLE, Chief Judge; WHITE and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Scott Halsey's troubles began when he bought a new tractor. Two days after the purchase, the tractor rolled over onto Halsey while he was bailing hay. Halsey suffered serious injuries in the accident, including a broken arm and nearly blacking out. Halsey filed a complaint in Kentucky state court, bringing claims against the manufacturer of the tractor, AGCO, and the manufacturer of the tractor tire, Titan Tire. The crux of Halsey's complaint was that AGCO and Titan somehow created a defective tractor, which caused a tire to blow, prompting the rollover. But unfortunately for Halsey, his troubles did not end with the tractor.

Halsey's complaint did not quantify his damages in dollars. Halsey did allege, however, that he suffered medical expenses, lost wages, property damage, physical pain, mental suffering, and permanent impairment of his ability to work and earn money. In response, AGCO sent discovery requests to Halsey—asking him whether he was seeking more than $75,000 in damages (the threshold amount for federal jurisdiction). At first, Halsey refused to answer. But months

later, he admitted that his past medical expenses were $42,105.36. Halsey also reaffirmed that he wanted damages for pain and suffering—but that he could not determine the amount of those damages until the parties completed discovery. Finally armed with some dollar amount, AGCO removed the case to federal court. AGCO argued that, when combining the past medical expenses with the additional pain and suffering damages, it was more likely than not that Halsey's alleged damages exceeded $75,000. The district court agreed and denied Halsey's motion to remand the case to state court.

Things got only worse for Halsey in federal court. In April 2017, the district court created the case schedule, which included a June 1, 2017 deadline for Halsey to complete discovery and identify his expert witnesses. (And to be sure, Halsey knew of this deadline no later than March.) But discovery did not go smoothly. The parties argued over discovery requests, deposition topics, and scheduling—which at one point forced the district court to quash Halsey's discovery notices as "too overreaching and burdensome." The district court also pushed back the deadline to identify expert witnesses, giving Halsey an extra month. But still, Halsey failed to meet the July 1, 2017 deadline. The district court denied Halsey's later motions to amend the scheduling order and for leave to file late expert disclosures. And when Halsey finally disclosed his expert witnesses (which the district court disregarded as untimely), he identified only medical experts—failing to disclose any expert that could testify about the tractor.

With no expert to explain how the tractor was allegedly defective, the district court granted summary judgment in favor of the defendants and dismissed the case. The district court explained, "expert proof is necessary to show that the alleged defect was a substantial factor in causing

[Halsey's] injury," but he has "not presented any evidence, expert or otherwise, that a particular use of the tractor (on an incline, bearing loads above a certain weight, etc.)" could have "resulted in the unreasonable risk of a rollover situation." (Opinion, R. 139 at 7–8.) Said another way, without an expert, Halsey could not prove his case.

Halsey now appeals several of the district court's orders, including denial of the motion to remand, various discovery rulings, and the grant of summary judgment. But because we agree that federal jurisdiction is proper, the district court did not abuse its broad discretion over discovery, and Halsey failed to introduce sufficient evidence to support his case, we affirm the district court.

## I.

To start, we review "determinations of subject matter jurisdiction *de novo*." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404 (6th Cir. 2007). "Generally, a civil case brought in a state court may be removed by a defendant to federal court if it could have been brought there originally." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000) (citing 28 U.S.C. § 1441(a)). At issue here is whether the defendants met their burden to show that the district court had "diversity" jurisdiction when they removed the case. This means AGCO properly removed the case if "the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest." *Id.* (citing 28 U.S.C. § 1332(a)).

There is no dispute that AGCO met the first requirement. Halsey (and his wife, Kimberly) live in Kentucky, AGCO is a Delaware business headquartered in Georgia, and Titan is a Delaware business headquartered in Illinois. The question is whether the amount in controversy exceeded $75,000.

"Generally, because the plaintiff is the 'master of the claim,' a claim specifically less than [$75,000] should preclude removal." *Rogers*, 230 F.3d at 871. But removal becomes more complicated when the plaintiff claims an unspecified amount of damages. *See Naji v. Lincoln*, 665 F. App'x 397, 400 (6th Cir. 2016). In this situation, we place the burden on the party seeking to remove the case to federal court "to show by a preponderance of the evidence that the amount in controversy requirement has been met." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001); *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553–54 (2014). But this is not a "dauting burden" that requires the defendants to "research, state and prove the plaintiff's claim for damages." *Hayes*, 266 F.3d at 572 (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993)). Instead, the defendants need only "show that it is 'more likely than not' that the plaintiff's claims" exceed $75,000. *Rogers*, 230 F.3d at 871 (quoting *Gafford*, 997 F.2d at 158). We calculate this amount at the time of removal. *Id.* at 871–72.

In the notice of removal, AGCO explained why Halsey's claims exceeded $75,000. AGCO compared Halsey's unspecified damages—including future medical expenses, pain and suffering, property damage, lost wages, and impairment to his ability to work and earn money—to his $42,105.36 in past medical expenses. According to AGCO, if Halsey added the value of his unquantified damages to his past medical expenses, it was more likely than not that the amount in controversy exceeded $75,000. In other words, by comparison, Halsey's pain and suffering and other unquantified damages were likely worth at least $32,894.65. *See Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 252–53 (6th Cir. 2011) (requiring $75,000 and "one penny"). In response to Halsey's motion to remand, AGCO argued that Halsey knew his claims exceeded the

4

jurisdictional amount but refused to give any dollar amount for his pain and suffering[1] because he wanted to avoid federal jurisdiction.

On appeal, Halsey does not contest that his pain and suffering may very well push his damages over the $75,000 necessary for federal jurisdiction. Instead, Halsey argues that AGCO failed to meet its burden to prove that the pain and suffering in fact did.[2]

But AGCO did not encounter a "daunting burden" in removing the case. Instead, AGCO needed only to file "a short and plain statement of the grounds for removal," *Dart Cherokee*, 135 S. Ct. at 553 (quoting 28 U.S.C. § 1446(a)), "show[ing] that it is 'more likely than not' that the plaintiff's claims" exceed $75,000. *Rogers*, 230 F.3d at 871. AGCO did more—it engaged in state-court discovery to determine the amount of Halsey's damages before it removed the case. *See id.* (citing 28 U.S.C. § 1446(c)(2)(B)). And to be sure, both sides point fingers over the completeness of the discovery requests and answers. But as the district court explained, after discovery, "it's obvious that there's $42,000 in medical expenses." (Tr. Mot. to Remand Hr'g, R. 150 at 17.) Discovery also confirmed that Halsey sought pain and suffering damages in "a fair amount," which as his previous discovery requests explained, may or may not total more than

---

[1] In his motion to remand, Halsey withdrew his damage requests for property loss, lost wages, and impairment of earning capacity.

[2] Halsey also argues that Anthem Health Plans of Kentucky, Inc.'s intervening claim defeats jurisdiction. But Anthem's claim is one of subrogation—if Halsey recovers medical expenses from the defendants, Halsey may have to use that money to reimburse Anthem. This is not a separate claim that reduces the amount in controversy. Instead, Anthem shares a joint interest in Halsey's potential recovery, if any. *See Siding & Insulation Co. v. Acuity Mut. Ins. Co.*, 754 F.3d 367, 371 (6th Cir. 2014) (relying on *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012)). Thus, the general rule applies: "Jurisdiction, once established, cannot be destroyed by a subsequent change in events." *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990).

$75,000 when added to his past medical expenses. And although Halsey refused to quantify his pain and suffering damages, the district court explained that in its "experience over 41 years of doing this, [it] would say that there would be at least three times the [$42,000 in] pain and suffering." (*Id.*) *See Valinski v. Detroit Edison*, 197 F. App'x 403, 405 (6th Cir. 2006) (explaining that a federal court has an independent obligation to ensure jurisdiction).

Further, it is telling that Halsey refused to deny that his damages exceeded $75,000. AGCO specifically asked Halsey to "[a]dmit that you are seeking more than $75,000, exclusive of interest and costs, as damages for the claims asserted in the action." (Req. Admis., R. 20-1 at 2.) But Halsey responded that he could "neither admit nor deny that he will seek more than $75,000 in this action due to a lack of information and knowledge." (Halsey Resp. to Req. Admis., R. 20-3 at 1.) The Seventh Circuit has faced this situation several times. *See, e.g.*, *Webb v. Frawley*, 858 F.3d 459, 461–62 (7th Cir. 2017). And if the plaintiff refuses to admit or deny that his damages exceeded $75,000, the Seventh Circuit applies an inference that the plaintiff "thinks his claim may be worth more." *Id.* at 462 (quoting *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000)); *see also* Wright & Miller, 14AA Fed. Prac. & Proc. Juris. § 3702.1 n.18.20 (4th ed. 2018) ("More recent cases have tended to take a middle ground: allowing plaintiff's failure to stipulate that damages do not exceed $75,000 to raise an inference or count as evidence that the jurisdictional requirement is met.") (collecting cases)); *Miller v. Malik*, No. 11-74, 2011 WL 2968428, at *2 (E.D. Ky. July 20, 2011) ("[A]mount-in-controversy requirement satisfied because, among other reasons, 'plaintiff [did not] deny the damages exceeded the jurisdictional amount

when given the opportunity.'" (citing *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000))).

We find this approach persuasive and conclude that the district court could properly apply an inference that Halsey thinks his claims may be worth more than $75,000.[3]  As such, Halsey's "refusal to admit that [he] would not seek individual damages in excess of $75,000 worked against [him]."  *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006).  And AGCO's evidence established that it was more likely than not that Halsey's claims exceeded $75,000.

The adequacy of this evidence becomes clear when compared to other cases.  For example, this is not a case where the defendant provided no quantifiable evidence of damages—leaving the court with nothing but speculation.  *See, e.g.*, *Suwala v. Progressive Ins. Co.*, No. Civ. A. 2005-135, 2005 WL 2076490, at *3 (E.D. Ky. Aug. 25, 2005) (remanding the case).  Nor is this a case in which discovery revealed the complete amount of damages, including pain and suffering.  *See, e.g.*, *Phillips v. Blazin Wings, Inc.*, No. 5:12-266, 2013 WL 1558229, at *1 (E.D. Ky. Apr. 10,

---

[3] Halsey argues that he could not fully respond to AGCO's discovery requests because of "trial strategy" and the volatility of discovery.  But this is not the first time courts in our circuit have rejected this argument.  For example, as the district court explained in *Miller*, that "[the plaintiff] is so unsure about the damages []he is claiming at this late date is either a sign of poor preparation or deliberate evasion."  2011 WL 2968428, at *2.  Either way, Halsey "should not be able to prevent removal of a case that otherwise meets the requirements of federal jurisdiction by stonewalling and providing incomplete discovery responses[.]"  *Id.* (collecting cases); *see also Puri v. Baugh*, No. 1:14-cv-137, 2015 WL 3796346, at *4 (W.D. Ky. June 18, 2015) ("Refusals to stipulate or specify are appropriately considered evidence when the most logical inference from the plaintiff's refusal is that she wants to avoid removal to federal court." (quotation marks and citation omitted)).  We agree.  And as our sister circuits explained, "[o]ur best guess" is that Halsey was "seeking [and indeed desired] higher damages"—but "wanted to remain in state court."  *See Webb*, 858 F.3d at 461–62.

2013) (remanding the case when "all damages total $49,811.40"). Instead, this case falls somewhere in-between.

We faced such a situation in *Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476 (6th Cir. 2014). There, the defendant explained that the plaintiff wanted two years of back pay in damages—totaling $68,250.00. *Id.* at 480. But the plaintiff also wanted "damages for humiliation, embarrassment, and attorney's fees [that] would be in addition to that amount." *Id.* With this combination, we affirmed the district court's determination that "it is more likely than not that the amount in controversy is at least $75,000.00." *Id.*

This result fits with other cases confirming diversity jurisdiction, including where "a fair reading of the unspecified and unliquidated damages sought by Plaintiffs provided that more than $75,000 was in controversy." *See Hayes*, 266 F.3d at 573; *see also Wood v. Stark Tri-Cty. Bldg. Trades Council*, 473 F.2d 272, 274 (6th Cir. 1973) (holding that $3,000 in actual damages combined with unquantified punitive damages met the $10,000 jurisdictional amount); *De Anguilar v. Boeing Co.*, 11 F.3d 55, 57–58 (5th Cir. 1993) (explaining that it was facially apparent that the amount-in-controversy exceeded $50,000 where the claims involved wrongful death); *Allen v. Toyota Motor Sales, U.S.A., Inc.*, 155 F. App'x 480, 481–82 (11th Cir. 2005) (per curiam) (affirming diversity jurisdiction where "one component of the damage request" was $66,678.65, while the other component was unspecified damages for loss of use, lost wages, and aggravation); *Miller*, 2011 WL 2968428, at *2–3 (denying remand where plaintiffs sought $28,039.10 in medical expenses in addition to other categories of unquantified damages); *Bass v. IKEA U.S. East, LLC*, No. 16-cv-10694, 2016 WL 2342321, at *2 (E.D. Mich. May 4, 2016) (finding that the amount-

in-controversy likely exceeded $75,000 when the plaintiff incurred "substantial sums of money for medical care" and the complaint asked for pain and suffering and mental anguish damages).

Here, Halsey filed a complaint with no reference to the dollar amount of his alleged damages. In response, AGCO did not immediately remove the case. Instead, it engaged in state-court discovery to find quantifiable evidence of Halsey's damages. And that is exactly what AGCO found: one component of Halsey's damages was $42,105.36 in past medical expenses, and the other component was undetermined pain and suffering that Halsey is unable or unwilling to confirm will not cause his total damages to exceed $75,000. This combination made it more likely than not that Halsey's claims exceeded $75,000. We affirm the district court's decision.

**II.**

Next, Halsey challenges the district court's handling of discovery—appealing the denial of his motion to amend the scheduling order and the denial of his motion to stay summary judgment pending discovery. We review both decisions for abuse of discretion. *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999); *Marcilis v. Twp. of Redford*, 693 F.3d 589, 597 (6th Cir. 2012). "An abuse of discretion occurs when 'the district court's decision is clearly unreasonable, arbitrary or fanciful.'" *Marcilis*, 693 F.3d at 597 (quoting *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 343 (6th Cir. 2012)). And because district courts "have broad discretion and inherent power" to manage discovery, "we will intervene only if the decision was an abuse of discretion resulting in substantial prejudice." *Hahn*, 190 F.3d at 719 (citing *Emmons v. McLaughlin*, 874 F.2d 351, 356–57 (6th Cir. 1989)).

For the scheduling order, Halsey argues that he needed more time despite his "best efforts" to comply with the schedule. For the motion to stay, Halsey again argues that he needed more time for discovery. According to Halsey, AGCO and Titan caused the discovery problems—and with more time, he could have solved these problems. But according to AGCO and Titan, Halsey caused the discovery problems. No matter what, the district court explained that "[t]he magistrate judge has tried to resolve the discovery disputes" between the parties (Order, R. 55 at 1), which included months of fighting, discovery hearings, quashed subpoenas, and an amended scheduling order. And at the end of this fighting (and having already amended the schedule once), the district court found that Halsey failed to try to meet the deadlines in good faith and denied his request to further amend the schedule. In the district court's words: "Plaintiffs' counsel has made their bed and now they must lie in it." (*Id.* at 2.) The district court denied the motion to stay for the same reasons.

In sum, the district court worked with the parties to resolve the discovery disputes. But Halsey still failed to comply with the district court's orders and schedule. While both sides likely share blame for the distractions, the district court did not abuse its discretion in managing this contentious discovery. *See Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003) ("[R]equiring that a party diligently attempt to meet the scheduling order's deadlines before the deadline can be changed[.]" (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002))). We affirm the district court's discovery decisions.

**III.**

Finally, Halsey challenges the district court's grant of summary judgment to defendants on his claims for strict liability, negligence, and breach of warranty, which we review de novo. *Lutz v. Huntington Bancshares, Inc.*, 815 F.3d 988, 992 (6th Cir. 2016). Halsey claims that AGCO and Titan somehow created a defective tractor, which caused a tire to blow, prompting the rollover. More specifically, he claims that the tires were underrated and could not handle the weight of the tractor, its attachments, and the expected load. The district court dismissed the claims because Halsey failed to present any expert testimony about the tractor or tire. And without such expert proof, there was no competent evidence that the defendants' actions (either through bad design or failure to warn) caused the tractor to roll over and injure Halsey. We agree with the district court.

Under Kentucky law, a plaintiff can bring a claim against a manufacturer of a defective product under many theories. *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 378 (6th Cir. 2014). "Liability may result from defective design, for manufacturing defects, and for failure to warn." *Id.* (quoting *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 250 (Ky. 1995), *overruled on other grounds by Martin v. Ohio Cty. Hosp. Corp.*, 295 S.W.3d 104 (Ky. 2009)). Liability may also result under various claims, such as strict liability, negligence, and breach of warranty. *Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. 1970). But regardless of the theory or claim, "all of them have one common denominator[:] . . . causation must be established." *Id.* Indeed, "[t]he plaintiff has the burden to establish causation under the substantial factor test—that is, plaintiff must prove that the defendant's conduct was a substantial factor in bringing about plaintiff's harm." *Burgett*, F. App'x

at 378 (quoting *King v. Ford Motor Co.*, 209 F.3d 886, 893 (6th Cir. 2000) (brackets omitted));

*Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 507 (6th Cir. 1998).

To show that a defect caused the plaintiff's injury, Kentucky law requires a plaintiff to introduce certain evidence. First, "the plaintiff must demonstrate that an identifiable defect probably caused the accident." *Gray v. Gen. Motors Corp.*, 133 F. Supp. 2d 530, 533 (E.D. Ky. 2001), *aff'd*, 312 F.3d 240 (6th Cir. 2002) (citing *Midwestern V.W. Corp. v. Ringley*, 503 S.W.2d 745 (Ky. 1973)). And second, in cases alleging a design defect, the plaintiff must offer "proof of a feasible alternative design." *Burgett*, 579 F. App'x at 378 (quoting *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004)); *Gray*, 312 F.3d at 242. This is exactly what an expert is for:

> In Kentucky design defect cases[,] expert witnesses have explained the relevant elements of the design, pointed out perceived deficiencies or defects in the design, explained what choices the manufacturer made in the design, identified other alternative designs that were available, and pointed out the risks associated with the chosen design as compared with the alternatives available.

*Stevens v. Keller Ladders*, 1 F. App'x 452, 458 (6th Cir. 2001) (citing *Leslie v. Cincinnati Sub–Zero Prods., Inc.*, 961 S.W.2d 799, 804 (Ky. Ct. App. 1998)). When a plaintiff fails to provide that evidence, we have affirmed the dismissal of cases as "simply a failure to offer the proof necessary to establish the claims asserted." *Gray*, 312 F.3d at 242; *see also Burgett*, 579 F. App'x at 379–80; *Yonts v. Easton Tech. Prods., Inc.*, 676 F. App'x 413, 419–20 (6th Cir. 2017); *Early v. Toyota Motor Corp.*, 277 F. App'x 581, 587 (6th Cir. 2008).

Here, an expert certainly would have helped. For example, Halsey does not explain the design of the tractor, the alleged deficiencies in the design, any underlying dangerous conditions

12

of the tractor, the risks associated with operating the tractor, feasible alternative designs that would have prevented the rollover, or warnings that would have alerted him to any risks or dangerous conditions. Simply put, Halsey failed to show a defect that probably caused his injuries. *See Gray*, 312 F.3d at 242. This is precisely what an expert is for.

But even if we overlook Halsey's failure to obtain an expert, his claims still fail. To show that the tractor had a design defect, Halsey relies on his own calculation of the weight on the tires (including the weight of the tractor, hay bale, and implement) compared to the maximum load capacity listed on the tire specification sheet. From that calculation, Halsey argues that the tires were underrated and inadequate for his ordinary use of the tractor. Halsey, however, has not shown he is qualified to opine on the necessarily complex and technical question of whether the tires were underrated or inadequate. Indeed, Halsey's simple calculation fails to consider several factors that Titan's expert asserts would affect the weight the tires could carry, including the distribution of the weight on the front axle, the tire pressure, the slope of the incline, and the impact of the fluid in the tires. (*Cf.* Ogden Rep., R. 59-1 at 3–4 (considering tire pressure, weight distribution, and slope of incline to determine load capacity of tires and weight on tires).) Titan's expert contends that a properly inflated tire could carry more than the maximum load capacity listed on the tire specification sheet and concludes that the tire was capable of carrying the load on Halsey's tractor. If two experts expressed contrasting views on the capacity of the tire, we would have a classic "battle of the experts." But such technical calculations are beyond the knowledge of the ordinary lay person. Halsey does not even attempt to consider these factors and does not claim he has the expertise to judge them irrelevant. Thus, Halsey has not offered competent evidence of a defect.

In some circumstances, Kentucky law allows a plaintiff to establish a product defect that probably caused his injuries with circumstantial evidence. *Burgett*, 579 F. App'x at 379 (citing *Holbrook*, 458 S.W.2d at 157–58). But to do so, Halsey "must negate other possible causes for the failure of the [tractor] to function properly, for which each respective Defendant would not be liable." *Id.* (citations and quotation marks omitted). Halsey has not done this. He failed to offer any evidence to negate other potential causes of the rollover, including Titan's expert's theory that the rollover was caused by the tractor operating on too steep a slope. (*See, e.g.*, Kuhl Rep., R. 59-2 at 3 ("The rollover was a result of the tractor operating on a slope that was too steep, causing the tractor to roll over. Neither the tire nor wheel contributed to the roll over.").) As the district court explained, "[the jury] could equally imagine that the tire was underrated and overwhelmed by the load, that the tire came into contact with a sharp object on the hillside, that the air temperature changed significantly . . . or that someone slashed the tire in an effort to cause an accident."[4] (*See*

---

[4] Halsey asks us to "reach the same conclusion as in *Burgett*"—a products liability case about a lawn mower. But the court in *Burgett* concluded that the plaintiffs failed to show through circumstantial evidence a defect that was a substantial factor in causing their injury. *Burgett*, 579 F. App'x at 379. The plaintiffs in *Burgett* suffered from the same problem as Halsey: "the Burgetts have not actually identified a design defect, and they are groping in the dark without expert testimony." *Burgett v. Troy-Bilt LLC*, 970 F. Supp. 2d 676, 681 (E.D. Ky. 2013), *aff'd*, 579 F. App'x 372, 379 (6th Cir. 2014). The district court continued: "[t]he mower is a complex piece of machinery. Its electrical system is intricate. The Court itself would be unable to make heads or tails of a diagram of its electrical system without assistance. Almost any defect—barring something painfully obvious—would require scientific or specialized knowledge to understand." *Id.* And even more, the court in *Burgett* listed many other potential causes for the plaintiff's injuries, concluding that "[w]ithout expert testimony or direct evidence, the Burgetts cannot hope at trial to pluck the right fish out of this sea of possibilities." *Id.* at 682. In short, *Burgett* supports our conclusion.

Opinion, R. 139 at 10.)  Unlike defendants' experts, Halsey did not address different rollover scenarios, nor did he provide support for what caused (or did not cause) the rollover.

Instead, Halsey asks us to accept his testimony that he thinks the "tire blew"—or that he thinks the tire rim "gave way, [the tire] dropped, [and the tire] deflated"—causing the rollover. (Halsey Dep., R. 78-2 at 97.)  Halsey testified that he was bringing a roll of hay up a hill and then felt a sudden drop on the right front tire.  After he felt the drop, the tractor started tilting and then turned over.  Although this testimony provides evidence of the sequence of events, it does not establish that the tire blew out or deflated because it was underrated or inadequate.[5]  Again, the tire could have blown out or deflated for a number of other reasons, including that the tire was underinflated or that the slope of the hill was too steep.  Halsey failed to negate these other theories and therefore show, through circumstantial evidence, that the tractor's underrated and inadequate tires caused his injuries.

In sum, Halsey failed to introduce competent evidence that a defect or underlying dangerous condition existed or caused his injuries.  *See Yonts*, 676 F. App'x at 419–20.  Thus, Halsey did not offer the proof necessary to establish his claims.  And we affirm the district court.

---

[5] Indeed, Halsey admits that his theory on the how tractor rolled over "is strictly speculation" and his own "guesstimation as to what happened."  (Halsey Dep., R. 78-2 at 45.)